ELLIOTT S. SHUGAR v. H. B. REAL PROPERTY, INC.

No. 755DC476

(Filed 3 December 1975)

Landlord and Tenant § 13— lease with option to renew — contract to sell premises — landlord no longer owner — no breach of lease

Where a lease providing for rental of the barber shop section of a resort hotel for the 1972 "Season" also provided that " . . . Lessee shall have the option of rental for the 1973 season at the same rate should the present owners still own this property at that time," the trial court properly determined that defendant had not breached the lease, though defendant refused to renew the lease for the 1973 season, since defendant had entered into a contract to sell the hotel and therefore did not own the premises during the year 1973.

APPEAL by plaintiff from *Barefoot, Judge.* Judgment entered 9 January 1975 in District Court, NEW HANOVER County. Heard in the Court of Appeals 23 September 1975.

On 10 February 1972, plaintiff knowing that defendant was contemplating the sale of his rental property, nonetheless entered into a lease agreement for the rental of the barber shop section in what was then defendant's resort hotel at Carolina Beach. In pertinent part the lease provided for rental of the shop for the 1972 "Season" and that " . . . Lessee shall have the option of rental for the 1973 season at the same rate should the present owners still own this property at that time."

Under this agreement, plaintiff occupied and utilized the property for his wig shop business and on or about 4 September 1972 attempted to renew the lease and pursuant thereto tendered part of his 1973 season rental charge. Defendant refused plaintiff's tender, explaining again to plaintiff that the hotel was

presently listed for sale and that several potential purchasers had indicated serious interest in the property. Prior to 25 September 1972, defendant appointed Franklinton Real Estate Company its exclusive agent to sell the hotel. In December 1972 defendant entered into a contract with Harold Herring providing that if Franklinton did not sell the hotel within the period granted, defendant would sell the property to Herring. On 1 January 1973, Herring paid defendant $1,000 as a deposit on the purchase price. On 17 January 1973, he made an additional payment of $12,500. Plaintiff again tried to pay defendant the rental fee for the 1973 season in January 1973 and was advised that defendant already had executed a "lease-purchase" contract for the sale of the hotel and that any subsequent leasing negotiations should be pursued through the buyer, a Mr. Harold Herring. Plaintiff's subsequent contact with Herring proved fruitless; Herring had already rented the space for the next season.

Under the January 1973 "lease purchase" agreement between defendant and Herring, the latter leased the hotel and had the option to purchase the property if the Franklinton Real Estate Company failed to sell the hotel property within the time allotted to them by the defendant. When the period lapsed without Franklinton having made a sale, defendant and other interested parties executed a deed to Herring in March of 1973 which was duly recorded several months later in October of 1973.

Hearing the case without a jury, the trial court found that defendant had not breached the lease ". . . in that it [i.e. the defendant] had entered into a contract to sell the premises and therefore did not own the premises during the year 1973." From said judgment for defendant, plaintiff appealed.

*Goldberg & Anderson, by Frederick D. Anderson, for plaintiff appellant.*

*Roland C. Braswell for defendant appellee.*

MORRIS, Judge.

Plaintiff contends that the trial court failed to find facts sufficient to support its conclusion that defendant did not breach the lease agreement. Specifically, plaintiff maintains that the

trial court erred in its finding that defendant had relinquished ownership prior to the 1973 "Season." Plaintiff, noting that an option contract is not a sale, argues that defendant was the "owner" at the time plaintiff attempted to exercise his renewal option. We disagree.

Essentially, the issue presented for our consideration is what in fact constitutes the loss of ownership of realty ". . . within [the] purview of [a] clause in [a] lease making renewal . . . inoperative in [the] event of such contingency." 15 A.L.R. 2d, Renewal of Lease in Case of Sale, p. 1040.

In an analogous case, the plaintiff and defendant had entered into a seven-year lease arrangement whereby the " '[f]irst party (lessor) grants to second party [*i.e.* lessee] the right to renew this lease at its expiration for a like period upon like terms; providing, however, that this renewal clause shall be inoperative in event first party shall sell said building at the expiration of this lease.' " *Fox v. Adrian Realty Co.*, 327 Mich. 89, 41 N.W. 2d 486, 487, 15 A.L.R. 2d 1037, 1039 (1950). Prior to the expiration of the lease, the original lessor contracted for the sale of the particular building to plaintiff under a "land contract" and conveyed the property by deed to the plaintiff after the expiration of the then outstanding lease agreement with defendant lessee. The Michigan Supreme Court, though recognizing the general rule that a vendor retains legal title under a "land contract," held that under the facts presented, an executory land contract constitutes a "sale" and thus rendered the renewal clause under the prior lease inoperative. *Id.* at 488.

We consider the reasoning in *Fox* persuasive in this case and note that "[i]t seems settled by well-reasoned authority that the execution of an enforceable contract for the sale of leased premises is sufficient to terminate the rights of the lessee under a lease covenant granting the privilege of renewal if the lessor shall not sell, or abrogating the privilege in the event of a 'sale.' " 15 A.L.R. 2d, supra, at 1040-1041. Moreover, this rule is applicable where there is no evidence, as in this case, of anything less ". . . than a good-faith transfer of ownership or title embracing the entire premises." *Id.* at 1042.

Here the plaintiff knew when he executed the lease in 1972 that defendant was contemplating listing his hotel property for sale and knew or should have known that a sale would effectively abrogate and nullify the basic renewal provisions under their lease.

Indeed, the renewal clause in this case clearly reflected this potentiality and was obviously designed to give defendant the necessary flexibility in any future sales negotiations. We are of the opinion and so hold that the language "should the present owners still own this property at that time" contemplated a contract for sale as well as a completed sale and conveyance of the property.

No error.

Judges HEDRICK and ARNOLD concur.